IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| SALLY A. BERRY,           ) | |
|                          ) | |
|     Petitioner,   ) | |
|                          ) | |
| v.                       ) | Civil Action No. 1:20-00294 |
|                          ) | |
| M.E. REHERMAN, Warden,    ) | |
|                          ) | |
|     Respondent.   ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On April 27, 2020, Petitioner, acting *pro se*,[1] filed her Emergency Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.[2] (Document No. 1.) Specifically, Petitioner is requesting relief pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (Id.) Petitioner states that she is requesting home confinement "[b]ecause of the COVID-19, my age, and family heart problems." (Id.) By Order entered on April 28, 2020, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 7.)

On May 13, 2020, Respondent filed her Response to the Order to Show Cause. (Document

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] Petitioner's action was originally filed in the Middle District of Pennsylvania. To the extent Petitioner was requesting compassionate release pursuant to 18 U.S.C. § 3582(c), the Middle District of Pennsylvania denied Petitioner's compassionate release request based on her failure to exhaust. *United States v. Berry*, 2020 WL 1984117 (M.D.Penn. April 27, 2020). The Middle District of Pennsylvania noted that Petitioner did not allege "any 'catastrophic health consequences' to make exhaustion futile or show that she could be unduly prejudiced if she had to wait to exhaust her administrative remedies with the BOP." *Id.* By Order entered on April 27, 2020, the Middle District of Pennsylvania construed Petitioner's claim as a Section 2241 Petition and transferred the action to this District.

No. 10.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) Petitioner failed to exhaust her administrative remedies (Document No. 10, p. 4, fn. 1.); and (2) "The authority to release inmates to home confinement rest solely with the BOP" (Id., pp. 4 – 6). As Exhibits, Respondent attaches the following: (1) The Declaration of Christopher Snuffer (Document No. 10-1, pp. 1 – 4.); (2) A copy of Petitioner's "Public Information Inmate Data" (Id., pp. 5 – 14.); (3) A copy of an e-mail from Petitioner to Ms. Baldwin dated May 8, 2020 (Id., pp. 15 – 16.); and (4) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 17 – 20.).

On July 24, 2020, Petitioner filed her Reply. (Document No. 16.) In Reply, Petitioner first argues that she should be excused from the exhaustion requirement based upon irreparable harm. (Id.) Specifically, Petitioner argues that due to her age and underlying health conditions she is "at high risk for severe (or possibly fatal) illness should she contract COVID-19." (Id.) Next, Petitioner appears to argue that the BOP has abused its discretion by failing to timely and properly consider her pre-release placement pursuant to the CARES Act. (Id.)

By Order entered on July 30, 2020, the undersigned directed Respondent to file a Surreply. (Document No. 17.) On August 12, 2020, Respondent filed her Surreply. (Document No. 18.) First, Respondent argues that "[t]he BOP cannot abuse its discretion by failing to timely independently consider petitioner for home confinement." (Id., p. 1.) Second, Respondent claims that the "BOP has timely responded to Petitioner." (Id., p. 2.) Finally, Respondent asserts that "[t]he BOP cannot be deemed to have abused its discretion when a final agency determination has not been made." (Id., pp. 2 – 3.) As Exhibits, Respondent attaches the following: (1) The Declaration of Melissa Evans (Document No. 18-1, pp. 1 – 3.); (2) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 4 – 8.); (3) A copy of Petitioner's

"Inmate History – First Step" (Id., pp. 9 – 10.); and (4) A copy of the e-mail from Respondent to the BOP Central Office requesting Exception Review for Petitioner (Id., pp. 11 – 13.).

On August 12, 2020, Petitioner filed as an Exhibit a copy of her pertinent medical records. (Document No. 19.)

## ANALYSIS

**1.     Failure to Exhaust:**

Respondent notes that Petitioner has failed to properly exhaust her administrative remedies. (Document No. 10, p. 4, fn. 1.) Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*,

through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection

to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust her administrative remedies. (Document No. 10, p. 4, fn. 1.) In support, Respondent attaches the Declaration of Mr. Snuffer. (Document No. 10-1, pp. 1 – 4.) Specifically, Mr. Snuffer states that "Petitioner has not exhausted her administrative remedies regarding this claim." (Id., p. 3.) In Reply, Petitioner argues that she should be excused from the exhaustion requirement based upon irreparable harm. (Document No. 16.) Specifically, Petitioner claims that due to her age and underlying health conditions she is "at high risk for severe (or possibly fatal) illness should she contract COVID-19." (Id.) In her Surreply, Respondent states that Petitioner did not file under administrative remedy until July 7, 2020 (more than two months after the filing of her Section 2241 Petition). (Document No. 18, p. 2.) Respondent notes that she timely responded to Petitioner's administrative remedy on July 20, 2020, and Petitioner did not appeal the denial. (Id.) Respondent, therefore, concludes that "any delay in reaching a final agency decision is attributable to Petitioner's delay in timely utilizing the BOP's administrative remedy procedures." (Id.) In support, Respondent attaches the Declaration of Ms. Evans. (Document No. 18-1, pp. 1 – 3.) Specifically, Ms. Evans states that "Petitioner filed an administrative remedy on July 7, 2020, regarding her desire to be released to home confinement," but "[t]his administrative remedy was denied and Petitioner has not appealed the denial." (Id., p. 1.) Additionally, a review of Petitioner's "Administrative Remedy Generalized Retrieval" reveals that Petitioner failed to fully exhaust her administrative remedies concerning her request for early release or home confinement based upon the COVID-19 pandemic. (Document No. 10-1, pp. 17 – 20 and Document No. 18-1, pp. 4 – 8.) Although Petitioner contends that she should be excused exhausting her administrative remedies because she is "at high risk for severe (or possibly fatal) illness should she contract COVID-19,"

the undersigned disagrees. Even accepting Petitioner's alleged medical conditions as true, Petitioner has not demonstrated that FPC Alderson has failed to take appropriate measures to protect her from contracting the coronavirus. See Defoggi v. United States, 2020 WL 2899495 (D.N.J. June 3, 2020)("Because the BOP's interpretation of the CARES Act is reasonable as applied to Petitioner and because he has not shown that the BOP has failed to provide adequate safety measures, he will not be prejudiced by dismissing the petition as unexhausted."); also see United States v. Thompson, 2020 WL 2121371, * 2 (S.D.W.Va. May 5, 2020)(J. Goodwin)("Though some district courts have waived Section 3582's exhaustion requirement because of the COVID-19 pandemic, the majority of district courts – albeit some with little to no discussion – have found that failure to exhaust administrative remedies is a death knell to a defendant's request for compassionate release.") The undersigned, therefore, finds that Petitioner's Section 2241 Petition should be dismissed for failure to exhaust. Notwithstanding the foregoing, the undersigned will consider Petitioner's claim.

2. **CARES Act:**

Petitioner seeks release to home confinement pursuant to the CARES Act. The CARES Act expanded the maximum period an inmate may spend on home confinement. The CARES Act provides "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner on home confinement." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). On April 3, 2020, the Attorney General determined that emergency conditions were materially affecting the functioning of the BOP, and thereby triggered the BOP's authority to expand the amount of time that an inmate may spend on home confinement. Thus, the CARES Act gives the BOP discretion and authority to place inmates

in "prerelease custody" under 18 U.S.C. § 3624(c)(2)." See BOP Program Statement No. 7320.01. Prior to the CARES Act, Section 3624(c)(2) limited the BOP's authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The CARES Act, however, temporarily suspends the above limitation. The CARES Act, as implemented by the Attorney General, expanded the authority of the BOP to review "all at-risk inmates – not only those who were previously eligible for transfer." Id. The CARES Act, however, "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, * 1 (D.N.J. April 9, 2020)(emphasis added). The Attorney General issued guidance for "prioritizing" home confinement for "at-risk inmates who are nonviolent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." See BOP Program Statement No. 7320.01. The BOP is to "consider the totality of circumstance for each individual inmate" based on the following non-exhaustive factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has demonstrated the verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility; and

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offense, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

Wagg v. Ortiz, 2020 WL 2745247, * 10 (D.N.J. May 27, 2020). As clearly stated above, an inmate's qualification for early release on home confinement under the CARES Act is an individualized determination by the BOP.

In her initial Response, Respondent states that Petitioner has not yet been reviewed for home confinement because Petitioner was evaluated as a "low risk" inmate. (Document No. 10.) Respondent explains that inmates scoring as "minimum risk" receive priority consideration for home confinement. (Id.) Respondent further argues that courts do not have the power to grant relief under Section 12003 of the CARES Act. (Id.) Respondent contends that the "authority to release inmates to home confinement rests solely with the BOP." (Id.) In Reply, Petitioner argues that the BOP has abused its discretion by failing to timely and properly consider her for home confinement under the CARES Act. (Document No. 16.) In her Surreply, Respondent notes that staff at FPC Alderson have now considered "Petitioner's suitability for home confinement, and on August 12, 2020, submitted a request to BOP Central Office for Petitioner to receive home confinement placement." (Document No. 18.) Respondent, however, notes that "[i]n order for a low recidivism risk inmate to receive home confinement placement, authorization must be approved through BOP's Central Office." (Id.) In support of the foregoing, Respondent attaches the Declaration of Ms. Evans and supporting Exhibits. (Document No. 18-1.) In her Declaration, Ms. Evans states, in pertinent part, as follows:

6. On May 27, 2020, Petitioner's recidivism risk level was re-reviewed in an effort to determine if her recidivism risk level had dropped from "low" to "minimum." This would have resulted in prioritization of her home confinement review. However, her recidivism risk level was determined to

still be "low."

* * *

8. FPC Alderson staff have recently begun to review "low" recidivism risk inmates for home confinement referrals, including Petitioner.

9. In order for a low recidivism risk inmate to receive home confinement placement, authorization must be approved through BOP's Central Office.

10. On August 12, 2020, FPC Alderson staff submitted a referral to BOP Central Office to determine if Petitioner will be authorized for home confinement.

(Id., pp. 2 - 3.)

First, the undersigned finds that this Court does not have authority to order that Petitioner be placed on home confinement. See 18 U.S.C. § 3621(b). Pursuant to Title 18 U.S.C. § 3621, the BOP has authority to designate a prisoner's place of imprisonment. See also Trowell v. Beeler, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). As explained above, the CARES Act merely expanded the BOP's authority to transfer a prisoner to home confinement. See Tillman v. Rickard, 2020 WL 2114571, * 1 (S.D.W.Va. May 4, 2020)(J. Faber)("The CARES Act . . . vests greater discretionary authority to the Director of the Bureau of Prisons to lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement."). The CARES Act did not grant courts authority to make decisions as to a prisoner's placement. See Hardin v. Acting Warden F.C.I. Edgefield, 2020 WL 3259761, * 4 (D.S.C. May 6, 2020)("[A]lthough the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, this court lacks jurisdiction to order home detention for Petitioner under this provision."); United States v. McCann, 20202 WL 1901089, * 3 (E.D.Ky. April 17, 2020)(finding that "the Court has no authority under [the CARES Act] to order that a prisoner be placed on home

confinement"); United States v. Read-Forbes, 2020 WL 1888856, * 5 (D.Kan. Aril 16, 2020)("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Engleson, 2020 WL 1821797, * 1 (S.D.N.Y. April 10, 2020)(the "ultimate decision of whether to release an inmate to home confinement rests with the BOP"); also see McCarson v. Reherman, 2020 WL 2110770, * 2 (D.S.C. May 4, 2020)("The decision of whether to release an inmate to discretionary home confinement rest solely with the Bureau of Prisons."). Thus, the undersigned finds that this Court lacks authority to grant Petitioner's release to home confinement. The undersigned further finds that Petitioner has been appropriately considered for prioritized review of home confinement placement based on the CARES Act. The record reveals that Petitioner has a "low" recidivism risk. Thus, Petitioner was not entitled to prioritized review. FPC Alderson staff, however, has now begun its review of "low" recidivism risk inmates for home confinement referrals. As stated above, FPC Alderson staff have now considered Petitioner for home confinement and submitted a request to BOP Central Office for Petitioner to receive home confinement placement. The record clearly reveals that Petitioner is being referred to receive the relief she requests. There is no indication that Respondent or FPC Alderson staff abused their discretion. Based upon the foregoing, the undersigned finds that Petitioner is not entitled to relief base upon the CARES Act.

Based upon the foregoing, the undersigned respectfully recommends that Petitioner's Emergency Section 2241 Petition (Document No. 1) be denied.

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**

.


that the District Court **DENY** Petitioner's Emergency Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241(Document No. 1) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: October 16, 2020.



Omar J. Aboulhosn
United States Magistrate Judge